UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

SARAH TIBES and RAOUL TIBES,

                    Plaintiffs,

            -against-

HANSEATIC MOVING SERVICES, LLC,          <u>**MEMORANDUM AND ORDER**</u>

                  Defendant.          21-CV-3293 (RPK) (TAM)

---------------------------------------------------------X

HANSEATIC MOVING SERVICES, LLC,

                Third-Party Plaintiff,

            -against-

AG MOVING SERVICES, LLC,

                Third-Party Defendant.

---------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

       On October 5, 2020, Plaintiffs Sarah Tibes and Raoul Tibes ("Plaintiffs") filed a complaint in New York State Supreme Court to recover damages for injuries Sarah Tibes suffered on or about October 31, 2017, from a slip and fall due to allegedly defective or unsecured cardboard placed on the floor by Defendant Hanseatic Moving Services, LLC ("Hanseatic") and Third-Party Defendant AG Moving Services, LLC ("AG"). (*See* State Court Complaint ("Compl."), ECF No. 1-2 & ECF No. 19-3, ¶¶ 14–20; Pls.' Mem. in Support ("Pls.' Mem."), ECF No. 19-1, at 4.) After impleading Third-Party Defendant AG on January 29, 2021, Defendant Hanseatic removed the case to federal court on June 11, 2021. (Notice of Removal, ECF No. 1; Third-Party Summons and Complaint, ECF No. 19-6.) Plaintiffs now move for leave to amend the complaint to add

direct claims against Third-Party Defendant AG. (*See* Pls.' Mot. to Amend ("Mot."), ECF No. 19.) For the reasons discussed herein, Plaintiffs' motion is granted.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

As noted above, this case concerns injuries Plaintiff Sarah Tibes suffered due to a slip and fall. A key question in this case is which moving company had control over the premises where she was injured. In their original state court complaint filed on or about October 5, 2020, Plaintiffs alleged that Defendant Hanseatic maintained the premises where Plaintiff Sarah Tibes was injured at the time of her fall. (*See* Compl., ECF No. 19-3, ¶¶ 11–14.) However, around November 24, 2020, Defendant Hanseatic sent a tender letter to AG outlining Plaintiffs' claims and explaining that AG was subcontracted to perform all moving services for Plaintiffs' move. (*See* Pls.' Mem., ECF No. 19-1, at 4 (citing Tender Letter, ECF No. 19-5).) On January 29, 2021, Defendant Hanseatic impleaded AG as a third-party defendant in the state court action. (*Id.* (citing Third-Party Summons and Complaint, ECF No. 19-6).) Thereafter, on May 18, 2021, Plaintiffs filed an additional complaint in New York State Supreme Court asserting direct claims against AG, as to which Plaintiffs claim AG refused to accept service. (*Id.* at 3 (citing Additional Third-Party Summons and Complaint, ECF No. 19-9; Email Refusing Service, ECF No. 19-11); *see also* Aff. of Service as to AG, ECF No. 19-10.) AG has yet to appear or otherwise answer in the state court action. (*Id.*) On June 11, 2021, Defendant Hanseatic removed the case to this Court. (Notice of Removal, ECF No. 1.)

On October 4, 2021, the Court held an initial conference. (Oct. 4, 2021 ECF Minute Entry and Order.) The Court adopted the parties' proposed discovery schedule and set a deadline of February 18, 2022, to join new parties or amend the pleadings. (*Id.*) On

---

[1] This Order assumes familiarity with the underlying facts and relevant procedural history.

February 18, 2022, Plaintiffs filed a motion for leave to file a supplemental summons and amended complaint seeking to add AG, currently in the case as a third-party defendant, as a direct defendant in the action. (*See* Mot., ECF No. 19; Pls.' Mem., ECF No. 19-1, at 1.) The Honorable Rachel P. Kovner referred this motion to the undersigned Magistrate Judge. (Feb. 22, 2022 ECF Referral Order.) This Court then directed Plaintiffs to file (1) a letter brief explaining why the Court should grant leave to file an amended complaint, (2) the proposed amended complaint, and (3) a redline comparison of the original and proposed amended complaints. (Feb. 22, 2022 ECF Order.)

On March 1, 2022, Plaintiffs filed a memorandum in support of their motion to amend, to which Third-Party Defendant AG responded on March 15, 2022. (Pls.' Reply in Support ("Pls.' Reply"), ECF No. 20; AG Resp., ECF No. 21.) AG argues that they should not be added as a direct defendant because the proposed amended complaint does not relate back to the original complaint. (*See* AG Resp., ECF No. 21, at 3.) On March 24, 2022, the Court held a status conference, which included oral argument on the motion to amend. (Mar. 24, 2022 ECF Minute Entry and Order.) For the reasons set forth below, the Court grants Plaintiffs' motion to amend.[2]

## DISCUSSION

### I. Legal Standards

#### A. Leave to Amend

"The decision to grant or deny leave to amend is within the trial court's discretion." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. PVT Ltd.*, 338 F.R.D. 579, 583

---

[2] A magistrate judge's grant of a motion to amend a complaint is generally considered non-dispositive. *See, e.g., Lubavitch of Old Westbury, Inc. v. Inc. Vill. of Old Westbury, New York*, No. 08-CV-5081 (DRH) (ARL), 2021 WL 4472852, at *8–9 (E.D.N.Y. Sept. 30, 2021); *Prosper v. Thomson Reuters Inc.*, No. 18-CV-2890 (MKV) (OTW), 2021 WL 535728, at *1 n.1 (S.D.N.Y. Feb. 11, 2021); *Ashford Locke Builders v. GM Contractors Plus Corp.*, No. 17-CV-3439 (AMD) (CLP), 2020 WL 6200169, at *1 (E.D.N.Y. Oct. 22, 2020).

(S.D.N.Y. 2021) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)). Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, courts "should freely give leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Saravia v. Royal Guard Fence Co.*, No. 19-CV-2086 (DRH) (SIL), 2020 WL 5231696, at *9 (E.D.N.Y. Sept. 2, 2020) (explaining that parties should generally "be allowed to amend their pleadings . . . unless there is evidence of undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility" (quotation marks omitted)). If the underlying facts or circumstances relied upon by the party seeking leave to amend "may be a proper subject of relief," there is a preference that the party "be afforded the opportunity to test the claim on its merits." *United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 889 F.2d 1248, 1254 (2d Cir. 1989); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("*Loreley Fin.*") (explaining that the "permissive standard" of Rule 15 is consistent with the Second Circuit's "strong preference for resolving disputes on the merits").

### B.  Relation Back

Where the relevant statute of limitations has run on claims asserted in an original pleading, "an amendment that 'changes the party or the naming of the party against whom a claim is asserted' must be found to 'relate[ ] back to the date of the original pleading' in order to be timely." *Girau v. Europower, Inc.*, 317 F.R.D. 414, 419 (S.D.N.Y. 2016) (alteration in original) (quoting Fed. R. Civ. P. 15(c)); *see also Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 547 (2010); *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). Under Federal Rule of Civil Procedure 15(c)(1)(A) and the Advisory Committee's note to the 1991 amendment to the rule, "if the applicable statute of limitations is determined by state law . . . courts should assess both the state and federal relation back

4

doctrines and apply whichever law is more generous." *Anderson v. City of Mount Vernon*, No. 09-CV-7082 (ER) (PED), 2014 WL 1877092, at *2 (S.D.N.Y. Mar. 28, 2014) (citing *Wilson v. City of New York*, No. 03-CV-2495 (RLC), 2006 WL 2528468, at *2 (S.D.N.Y. Aug. 31, 2006)).

Under the New York relation-back doctrine, a plaintiff must generally demonstrate that:

> (1) both claims arose out of same conduct, transaction or occurrence, (2) the new party is 'united in interest' with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits and (3) the new party knew or should have known that, but for [a] mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well.

*Buran v. Coupal*, 87 N.Y.2d 173, 178 (1995); *see also Amaya v. Garden City Irrigation, Inc.*, 645 F. Supp. 2d 116, 121–22 (E.D.N.Y. 2009); *Roseman v. Baranowski*, 990 N.Y.S.2d 621, 623 (N.Y. App. Div. 2d Dep't 2014); *Lopez v. Wyckoff Hgts. Med. Ctr.*, 913 N.Y.S.2d 230, 232 (N.Y. App. Div. 2d Dep't 2010); *Schiavone v. Victory Mem. Hosp.*, 738 N.Y.S.2d 87, 89 (N.Y. App. Div. 2d Dep't 2002). It is a plaintiff's burden to establish the applicability of the relation-back doctrine by submitting evidentiary facts. *Kaczmarek v. Benedictine Hosp.*, 575 N.Y.S.2d 617, 619 (N.Y. App. Div. 3d Dep't 1991) (observing that defendants "are united in interest for purposes of [New York law] only when one defendant is responsible for the acts or omissions of another" (quoting McLaughlin, Practice Commentaries, McKinney's Cons. Laws of NY, Book 7B, CPLR C203:3, at 147)); *see also Rivera v. Wyckoff Heights Med. Ctr.*, 107 N.Y.S.3d 55, 56–58 (N.Y. App. Div. 2d Dep't 2019); *Anderson*, 2014 WL 1877092, at *3.

"The question of unity of interest is to be determined from an examination of (1) the jural relationship of the parties whose interests are said to be united and (2) the nature of the claim asserted against them by the plaintiff." *Connell v. Hayden*, 443

5

N.Y.S.2d 383, 393 (N.Y. App. Div. 2d Dep't 1981). As the Honorable Frederic Block has observed, "[t]he rather lofty phrase 'jural relationship' simply means a legal relationship giving rise to potential liability." *Amaya*, 645 F. Supp. 2d at 122; *see also Connell*, 443 N.Y.S.2d at 393 ("In other words, when because of some legal relationship between the defendants they necessarily have the same defenses to the plaintiff's claim, they will stand or fall together and are therefore united in interest.").

## II.    Analysis

In this case, aside from the allegations concerning the identity of the new defendant, Plaintiffs' proposed amended complaint is virtually identical to the original pleadings and alleges the same injuries Plaintiff Sarah Tibes suffered on October 31, 2017, when she slipped and fell due to allegedly defective or unsecured cardboard placed on the floor. (*Compare* Proposed Amended Complaint ("PAC"), ECF No. 20, *with* Compl., ECF No. 19-3.)[3] Additionally, Plaintiffs allege the same two causes of action. (*Compare* PAC, ECF No. 20, at 6–9, *with* Compl., ECF No. 19-3, at 6–9.)[4] Plaintiffs filed their motion to amend on February 18, 2022, within the deadline to join new parties or amend the pleadings set in the scheduling order. (*See* Mot., ECF No. 19; Oct. 4, 2021 ECF Order; *see also* Jan. 25, 2022 ECF Order.) As noted above, Third-Party Defendant AG objects to Plaintiffs' motion to amend, contending that it does not relate back to the original complaint. (*See* AG Resp., ECF No. 21, at 3.)

---

[3] The Court notes that Plaintiffs provided a proposed amended complaint as Exhibit M to their motion (ECF No. 19-14), but the Court refers to the blacklined version of the amended complaint that Plaintiffs filed at ECF No. 20 (which is identical to ECF No. 19-14 and notates changes in bold) when referring to the proposed amended complaint.

[4] Because the paragraph numbering in Plaintiffs' proposed amended complaint and original state court complaint re-starts in the second cause of action at paragraph 34, the Court refers to the page numbers at the bottom of the page.

Plaintiffs argue that their proposed amendment does relate back to their original complaint because, under New York's relation-back doctrine, proposed Defendant AG is united in interest with Defendant Hanseatic and the claims asserted in the complaint and the proposed amended complaint arose out of the same conduct, transaction, or occurrence. (*See* Pls.' Mem., ECF No. 19-1, at 7–8; Pls.' Reply, ECF No. 20, at 1–2.) In response, AG contends that the relation-back doctrine does not apply because AG and Hanseatic are not united in interest because, among other things, they do not have a relationship that gives rise to vicarious liability, and because they are "two completely separate and independent companies."[5] (AG Resp., ECF No. 21, at 3 (arguing that the companies are separate, do not share employees, and that their interests to not stand and fall together for various reasons).) But these arguments do not adequately answer the question as to whether, as a contractor and subcontractor, there is a "jural relationship" between Hanseatic and AG. As the Second Department has observed, the history of New York law illustrates that "the status of being 'joint contractors'" or "having [] a like jural relationship" may suffice to establish that two parties are united in interest. *Connell*, 443 N.Y.S.2d at 393.

In addition, as noted above, the record in this case indicates that AG was subcontracted to provide all services for Plaintiffs' move. (*See* Pls.' Mem., ECF No. 19-1, at 4 (citing Tender Letter, ECF No. 19-5); *see also* AG Resp., ECF No. 21, at 3 ("The only alleged relationship between them is that AG Moving allegedly acted as a subcontractor for Hanseatic.").) The factual and legal nature of the relationship between Hanseatic

---

[5] AG argues that the unity of interest prong must be established by showing a vicarious liability relationship. (*See* AG Resp., ECF No. 21, at 3.) AG's brief does not, however, squarely address the jural relationship test. (*See generally id.*)

and AG is not, however, fully developed at this stage of the case.[6] Accordingly, the Court declines to decide whether these putative defendants were united in interest, as any such findings could be premature. If necessary, such a determination can be made at the motion to dismiss or summary judgment stage. *See, e.g.*, *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-42 (JG) (VVP), 2015 WL 13650032, at *7–13 (E.D.N.Y. June 24, 2015) (conducting the relation-back analysis in the context of a motion to dismiss); *Hunter v. Deutsche Lufthansa AG*, 2013 WL 752193 (E.D.N.Y. Jan. 2013) (discussing jural relationship test in analysis of relation back in the context of a motion to dismiss); *Roe v. Johnson*, No. 07-CV-2143 (RJD) (RER), 2011 WL 8189861, at *3 (E.D.N.Y. Aug. 12, 2011) (same), *report and recommendation adopted*, No. 07-CV-2143 (RJD) (RER), 2012 WL 2575340 (E.D.N.Y. July 3, 2012); *see also Leonard v. Gen. Motors L.L.C.*, 504 F. Supp. 3d 73, 88–92 (D. Conn. 2020) (same).

Turning now to AG's knowledge regarding Plaintiffs' claims, counsel for AG stated at oral argument that AG "had notice that [they] were a third party, that [they] had potential third-party liability to Hanseatic" and that they have been on notice that the lawsuit existed. (Mar. 25, 2022 Hr'g Tr., ECF No. 22, 19:12–14, 20–21.) Indeed, AG has had notice of potential first-party liability in this action since at least May 18, 2021, when Plaintiffs filed an additional complaint in New York State Supreme Court asserting direct claims against AG. (Pls.' Mem., ECF No. 19-1, at 5; *see also* Additional Third-Party Summons and Complaint, ECF No. 19-9.)

---

[6] The Court notes, for example, that counsel for Hanseatic represented at oral argument that only AG employees were working at the relevant premises the day of the incident, and that Hanseatic was, and still is, named as an additional insured under AG's insurance policy. (Mar. 25, 2022 Hr'g Tr., ECF No. 22, 21:11–22:10.) Further explication on these issues will likely inform whether Hanseatic and AG had a jural relationship.

In addition, once Hanseatic removed the case to federal court, Plaintiffs sought to add AG as a direct defendant within the deadline for amending the pleadings. (*See* Mot., ECF No. 19; Jan. 25, 2022 ECF Order.) Notably, the notice prong of New York's relation-back doctrine does not even require that the proposed defendant actually received notice of the action, but instead "requires only that the new party be united in interest with the original defendant, such that the proposed defendant can be charged with such notice of the institution of the action." *Anderson*, 2014 WL 1877092, at *3 (quotation marks omitted). In this case, Hanseatic's counsel represented that he sent Mesa Insurance, Hanseatic and AG's joint insurance carrier, a tender letter when Plaintiffs filed the lawsuit against Hanseatic, providing further evidence that AG was on notice of the lawsuit because of their relationship with Hanseatic. (Mar. 25, 2022 Hr'g Tr., ECF No. 22, 22:11–21.) For these reasons, as well as those discussed above, the record contains sufficient facts to infer that AG and Hanseatic may have a "jural relationship," which would charge AG with notice of the lawsuit. *See Amaya*, 645 F. Supp. 2d at 125 (observing that "the 'linchpin' of the relation back doctrine is 'notice to the defendant within the applicable limitations period'" (quoting *Buran*, 87 N.Y.2d at 180)). Additionally, given that AG was already in the case as a Third-Party Defendant, it cannot be a surprise to AG, who should have known that but for Plaintiffs' lack of clarity as to who was responsible for actually performing their move, AG would likely have been named as a defendant in the original state court action.

In summary, Plaintiffs have stated facially plausible claims as to AG and have also alleged evidentiary facts sufficient to infer that there may be a jural relationship between Hanseatic and AG such that they are united in interest. *See, e.g.*, *Hemmings v. St. Marks Housing Ass'n, L.P.*, 642 N.Y.S.2d 1018, 1019–22 (N.Y. Sup. Ct. 1996) (finding unity of interest where a property owner was vicariously liable for a contractor's

performance pursuant to a contractual indemnification agreement, and concluding that the claim brought by an employee of a subcontractor, who did not know the identity of the general contractor at the time suit was commenced against the property owner, was not time barred). Accordingly, under the liberal standard applicable to motions to amend, Plaintiffs should be afforded the opportunity to file the proposed amended complaint. *See Lorely Fin.*, 797 F.3d at 190.

*     *     *     *     *

## CONCLUSION

For the reasons discussed above, Plaintiffs' motion to amend (ECF No. 19) is granted. Plaintiffs are respectfully directed to file their amended complaint by May 9, 2022.

**SO ORDERED.**

Dated:    Brooklyn, New York
          May 2, 2022

                                        _Taryn A. Merkl_
                                        _____
                                        TARYN A. MERKL
                                        UNITED STATES MAGISTRATE JUDGE